**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Marvin MOSES, Defendant-Appellant.
No. 11642.**

United States Court of Appeals
Seventh Circuit.

June 8, 1956.

Joseph E. Clayton, Jr., Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., William T. Hart, John Peter Lulinski, Asst. U. S. Attys., Chicago, Ill., of counsel, for appellee.

Before DUFFY, Chief Judge, and SWAIM and SCHNACKENBERG, Circuit Judges.

SWAIM, Circuit Judge.

The appellant was convicted by the court below, sitting without a jury, under two counts, of purchasing narcotic drugs not in stamped packages, 26 U.S.C.A. § 2553(a), and receiving, concealing, etc., narcotics, knowing them to have been imported contrary to law, 21 U.S.C.A. § 174. Appellant argues that his conviction should be reversed because it was obtained on the basis of evidence taken from his car by the Chicago city police without a warrant.

The appellant was driving his car north on Greenwood Street in Chicago at 3:30 in the afternoon. At 45th Street he passed three members of the Chicago city police robbery detail who were driving south on Greenwood. The officers were in uniform and driving a squad car. They testified that the appellant put his hand up as they passed him so that they could not see his face. This act plus what the officers could see of the appellant made them think that he was a man wanted for several robberies in that neighborhood, and they turned around and followed appellant's car. Within half a block appellant parked and the officers pulled up behind him.

One of the officers searched the passenger section of appellant's car but apparently found nothing. The officer then asked the appellant to open the trunk. Appellant offered to give the keys to the officer but at the officer's insistence appellant opened the trunk himself. In the trunk the police found 82.19 ounces of what the appellant told them was heroin.

The officers arrested the appellant and took him to their immediate superior, the head of the robbery detail, who told them to deliver appellant to the Chicago Narcotics Squad. The case was then taken over by federal narcotics agents, and the appellant tried in federal court. The errors which the appellant urges before us all concern the admissibility of the evidence seized by Chicago police without a warrant. A timely motion was made that the evidence be suppressed. After a hearing by the trial court the motion was denied. This denial plus the court's refusal to grant a judgment of acquittal for the same grounds, are the errors cited.

■ In the performance of their duty to support and enforce the Constitution of the United States the federal courts have refused to admit evidence obtained in violation of the Fourth Amendment prohibition against "unreasonable searches and seizures". Weeks v. United States, 232 U.S. 383, 34 S.Ct. 341, 343, 58 L.Ed. 652. The Fourth Amendment, however, applies only to the actions of officers of the federal government and is not applicable to the actions of state officials. Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408. Since an unreasonable search and seizure by a state official does not violate the Fourth Amendment, federal courts have held that their duty to enforce the Constitution neither necessitates nor justifies the exclusion of evidence so obtained by state officials. Weeks v. United States, 232 U.S. at page 398, 34 S.Ct. at page 346.

Cases arose in which state or municipal officers made an unreasonable search with which federal officers were so connected as to cause the court to hold that

officers of the United States Government had taken part in the search and seizure. In such a case, of course, the Fourth Amendment *had* been violated, and under the Weeks case, the evidence had to be suppressed. However, courts have not been in complete agreement as to just how closely federal officers have to be connected with the search and seizure before the Fourth Amendment is violated.

The rule was first stated in Byars v. United States, 273 U.S. 28, 33, 47 S.Ct. 248, 250, 71 L.Ed. 520:

> "We do not question the right of the federal government to avail itself of evidence improperly seized by state officers operating entirely upon their own account. But the rule is otherwise when the federal government itself, through its agents acting as such, *participates* in the wrongful search and seizure." (Emphasis added.)

In the Byars case a federal prohibition agent accompanied city police during an illegal search that uncovered counterfeit federal alcohol tax stamps. The key to the decision as stated by the Court was the *participation* of a federal agent in the illegal search. The Byars rule was broadened by Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293. In Gambino New York state police illegally searched Gambino's car and found liquor which was turned over, with Gambino, to federal prohibition agents. The Court ordered that the evidence be suppressed because it was obvious that the state police had acted "solely for the purpose of aiding the United States in the enforcement of its laws." Gambino v. United States, 275 U.S. 310, 317, 48 S.Ct. 137, 139.

The Courts of Appeals quickly expanded the rule still further. In Fowler v. United States, 7 Cir., 62 F.2d 656, this court directed the suppression of evidence that was obtained by state officers not solely to enforce federal law (the Gambino test) but that was obtained by a city "booze squad" which had an agreement with federal prohibition officers that the United States would have first opportunity to try prisoners under the federal law. Those not prosecuted by the United States Attorney were tried by the state. This court found the agreement sufficient to constitute a delegation of authority to state officers to search and arrest for the federal government, or a ratification by federal authority of the illegal acts of state officers. But the Gambino rule, already extended by Fowler v. United States, supra, was to undergo still further expansion.

Sutherland v. United States, 4 Cir., 92 F.2d 305, marks the high point in our courts' willingness to enforce federal responsibility for the illegal acts of state officials. In Sutherland the state alcoholic beverage control board obtained an invalid warrant to search the defendant's home. Under the supposed authority of this warrant a state investigator searched the house in search of alcohol. He found it, and the defendant was turned over to the federal government for prosecution. The facts do not differ greatly from those in the Fowler case, supra, but the language of the court was broader in directing suppression of the evidence. In Sutherland the court held that "general cooperation" between state and federal officials was enough to justify finding federal action in an illegal search by state officers; that no actual agreement was necessary if there was "general cooperation" between the federal officers and the state officers, and the federal officers in fact adopted the prosecution which the state officers had begun as a result of their illegal search.

It should be noted that the decisions most liberal in holding unreasonable searches and seizures by state officers to be violations of the Fourth Amendment were those involving violations of the prohibition law. Since ratification of the Twenty-first Amendment, the Fourth Amendment has not been applied as strictly to control the activities of state law enforcement officers in their dealings with those who violate federal laws.

In United States v. Haywood, 7 Cir., 208 F.2d 156, 157, this court held that when a search is made by state officers only, the defendant must prove an agreement or established practice *"whereby unlawful searches and seizures were to be made by the police officers and the evidence thus obtained turned over to federal officers."* (Emphasis added.) In Sutherland v. United States, supra, the court seemed to take judicial notice of the state officials' willingness to turn prohibition violators and the evidence against them over to federal authorities. In United States v. Haywood, supra, the defendant is told he must prove not merely an agreement or established practice between state and federal authority, but an agreement to make unlawful searches and seizures. In Serio v. United States, 5 Cir., 203 F.2d 576, certiorari denied 346 U.S. 887, 74 S.Ct. 144, 98 L.Ed. 391, another narcotics case, improperly obtained evidence was held properly admitted because it was obtained solely by state officers *seeking to enforce state laws.*

The decisions of the federal courts indicate that: (1) When federal agents actually initiate or participate in the unreasonable search the Fourth Amendment has been violated. (2) When the federal government can be said to have encouraged an unreasonable search by establishing a practice of accepting prisoners and evidence from state officials for prosecution under federal laws the Fourth Amendment has been violated. The defendant apparently has the burden of proving such an established practice. It is important that not only the practice of exchange of prisoners and evidence exist, but that the practice led to, or at least encouraged, the unreasonable search and seizure by state officers. See Fredericks v. United States, 5 Cir., 208 F.2d 712, where narcotics obtained by municipal authorities in an unreasonable search was held to have been properly admitted although a Deputy United States Marshal had called the city police and sent them to the tourist cabin occupied by the defendant where narcotics were found. But the deputy marshal called city police only because he suspected that the defendant was violating a state law; he was acting as a private individual. The subsequent accidental discovery of narcotics in the defendant's possession had no causal relationship with either the fact that the complaining party was a federal officer or the practice of turning certain narcotics law violators over to the federal government for prosecution.

■ In the instant case we must recognize that there is cooperation between narcotics agents of the City of Chicago and the federal government, but the undisputed facts show conclusively that this cooperation had nothing to do with the search and seizure involved here. Members of the Chicago robbery detail apprehended Moses because they suspected him of having committed robbery. In the course of their search they found a jar of white substance which the defendant voluntarily told them was heroin. Not knowing just what to do, the officers took Moses and the white substance to their superior officer, the head of the robbery detail. If the search and seizure was unreasonable, as defendant claims, the federal government was in no way responsible for it, and it was therefore not in violation of the Fourth Amendment. See Jones v. United States, 8 Cir., 217 F.2d 381, a case which is factually on all fours with this one. There the court held the improperly obtained evidence admissible under the authority of Serio v. United States, supra, and Fredericks v. United States, supra.

■ During oral argument the defendant's attorney, for the first time, claimed that the trial court had improperly prevented him from proving cooperation between city and federal narcotics officials, by sustaining objections to proper questions put to Albert Aman, District Supervisor, United States Bureau of Narcotics. We cannot properly consider this objection because it has not been briefed before us. Further, the argument is immaterial. General coop-

eration between Chicago and federal narcotics agents may be admitted without affecting the government's case, because the apprehension of defendant and the search of his car were completely unrelated to the narcotics bureaus of the city or federal government or any agreement between them.

The appellant claims that the introduction of the heroin taken from his car by the Chicago police was a violation of the Fifth as well as the Fourth Amendment. He claims that the prohibition against self-incrimination is incumbent upon federal courts whether the self-incriminating evidence was obtained by federal or state officials. This does not appear to be the law, however. Under Feldman v. United States, 322 U.S. 487, 64 S.Ct. 1082, 88 L.Ed. 1408, testimony compelled under a state immunity statute was held to have been properly admitted in a federal court. Under the Feldman case the heroin could be introduced as evidence in federal court, even if its seizure would have been a violation of the Fifth Amendment if carried out by federal officials, because it was seized by state officers.

Actually, however, seizure of the heroin and its introduction in federal court would not have been a violation of the Fifth Amendment under any circumstances. The seizure of physical evidence from a man's car, not his person, without violence or physical coercion is not compelling him "to be a witness against himself" within the meaning of the Fifth Amendment. Holt v. United States, 218 U.S. 245, 31 S.Ct. 2, 54 L.Ed. 1021; Adams v. People of State of New York, 192 U.S. 585, 24 S.Ct. 372, 48 L.Ed. 575; Schenck v. United States, 249 U.S. 47, 39 S.Ct. 247, 63 L.Ed. 470.

Admission into evidence of the heroin taken from appellant's car was not a violation of the Fourth or the Fifth Amendments to the Constitution of the United States, and the District Court properly overruled the motions to suppress the evidence and for judgment of acquittal.

Judgment affirmed.